NATHAN C. MONROE, executor, plaintiff in error, *vs.* NATHAN C. NAPIER *et al.*, defendants in error.

(TRIPPE, J., having been of counsel, did not preside in this case.)

1. When one has parted with his title to property, his declarations made subsequently thereto are inadmissible to defeat or disparage such title.
2. Where one of the parties to the contract or cause of action, in issue or on trial, answered interrogatories before her death, and such deposition is introduced in evidence, the opposite party is a competent witness.

Title. Declarations. Evidence. Witness. Before Judge HALL. Spalding Superior Court. August Adjourned Term, 1873.

For the facts of this case, see the decision.

A. M. SPEER; J. J. FLOYD; J. M. CAMPBELL, for plaintiff in error.

PEEPLES & STEWART; B. H. HILL & SONS; E. W. BECK; BOYNTON & DISMUKE, for defendants.

WARNER, Chief Justice.

This was a bill filed by Mrs. M. E. Varner, in her lifetime, against the defendants to set aside a deed executed by her to them on the 13th day of April, 1870, for certain described

lands specified therein, on the ground of alleged fraud in its procurement. Pending the suit, Mrs. Varner died, and her legal representative was made a party in her stead. On the trial of the case, there was much evidence introduced on both sides. The jury, under the charge of the court, (which was not excepted to,) found a verdict in favor of the defendants, setting up the deed made by Mrs. Varner to them. A motion was made for a new trial, on the several grounds set forth therein, which was overruled by the court, and the complainant excepted. The only grounds of error insisted on here was the rejection by the court of the testimony of several witnesses who were offered to prove the sayings and declarations of Mrs. Varner after she had made the deed and after the controversy had arisen between the parties, going to show that she had never parted with the title to the land as conveyed by the deed, and did not intend to convey any such title to the land as specified in the deed, and that she was dissatisfied with the terms of it, etc. The complainant also offered to read in evidence the codicil made by Mrs. Varner to her will, which purported to give a history of the execution of the deed, the terms and conditions on which it was executed, and the character of the deed she intended to execute, etc., which was ruled out by the court. The complainant objected to the admissibility of the evidence of George and Nathan Napier, the defendants, on the ground that Mrs. Varner, the other party to the contract, was dead, the complainant having first read in evidence the answers of Mrs. Varner to interrogatories taken before her death in relation to the contract. It appears from the evidence in the record that after the execution of the deed, Nathan Napier, with the knowledge and consent of Mrs. Varner, purchased his brother's interest in the land, she expressing no dissatisfaction, but said he had not paid his brother enough for the place.

1. It is a well settled rule of law, that when one has parted with his or her title to property, that he or she cannot, by his or her declarations made subsequently thereto, be allowed to defeat or disparage that title. If the law was otherwise, no

man's title to property would be safe.   It was insisted on the
argument that under the ruling of this court in *Howell vs.
Howell,* 47 *Georgia,* 492, the evidence offered at the trial in
this case was admissible.   In that case, the deed of Howell
was attacked for *want of capacity* to make it, and that it was
procured by his son Singleton, (who wrote the deed,) by the
exercise of undue influence over his father in his then imbe-
cile state of mind.   To sustain the deed, Singleton proved
the declarations of his father, repeatedly made before his
death, that he (Singleton) should have the land conveyed by
the deed.   To rebut this evidence, the complainants were al-
lowed to prove that during the last illness of Howell he ex-
pressed himself dissatisfied with the disposition made of his
property, and requested his son Singleton, to bring him the
will and deeds, that he might make such a disposition of his
property as would make all his children equal, and Singleton
replied, evasively, "You have no property to divide but some
money."   This evidence was admitted in that case only for
the purpose of rebutting the defendant's evidence as to his not
having exercised any undue influence over his imbecile father
in procuring the deed, and as a circumstance to be considered
by the jury as to his influence over his father in the then con-
dition of his mental capacity.   But the court distinctly an-
nounced the general rule of the law in that case, that the dec-
larations or admissions of Howell, after the title to the land
had passed out of him, were not admissible in evidence in
favor of the complainants against the defendant in that case.
There is a marked distinction between the two cases, in this,
that in Howell's case, the deed was attacked for the *want of
capacity* of the donor to make it.   In this case, the deed is
not attacked for the want of capacity of Mrs. Varner to make
it; in fact, the complainants are claiming the property under
her will, which was executed some time subsequent to the
deed, and we suppose that she had as much capacity to make
the deed as she had to make the will.   Upon a careful review
of the evidence offered by the complainant at the trial, and
ruled out by the court, including the recitals in the codicil of

the will, we find no error in ruling out the testimony offered, as disclosed in the record. The testimony was properly rejected, under the general rule of law before stated, and especially so in this case, because one of the parties claiming under the deed had purchased his brother's interest in the land conveyed by it, with the knowledge and consent of Mrs. Varner.

2. The next question to be considered is the admission of the testimony of George and Nathan Napier, over the objection of complainant, Mrs. Varner being dead at the time of the trial. The 3854th section of the Code declares that where one of the original parties to the contract or cause of action in issue or on trial is dead, the other party shall not be admitted to testify in his own favor. In this case Mrs. Varner was dead, but her testimony had been taken by interrogatories before her death, which were offered and read in evidence by the complainant, in which she fully stated her version and understanding of the contract at the time it was made. What is the reason and spirit of this statute and what motive had the legislature in the enactment of it? The reason, spirit and intention of the statute is, that when one of the parties to the contract is dead, and cannot give his version of the contract, the other party thereto shall not admitted to testify in his own favor. If, however, the party who is dead did testify while in life fully in relation to the contract, as in this case, and her testimony is read to the jury, shall the other party to the contract then be excluded from giving his version of it because the other party is dead at the time of the trial. Would such a construction of the statute be in accordance with the reason and spirit thereof? It may be within the strict letter of the statute, but it is no more within the reason and spirit of it than the law which enacted that whoever drew blood in the streets should be punished with the utmost severity, when it was held that law did not extend to the surgeon who opened the vein of a person that fell down in the street with a fit. The drawing blood in the streets by the surgeon was within the strict letter of the law, but not within the reason or spirit of it. So in this case, if the complainant

had not offered in evidence the testimony of Mrs. Varner, taken in her lifetime, in relation to the contract, the defendants would not have been competent witnesses to testify in their own favor in relation to it. But as the complainant offered and read in evidence her testimony in relation to the contract taken in her lifetime, then to have excluded the testimony of the defendants because she was dead, at the trial, would not have been in accordance with the reason and spirit of the statute, and the court did not err in admitting their testimony under the facts of the case before it. It was the duty of the court to give the statute a *reasonable* construction.

Let the judgment of the court below be affirmed.