## LOWE *et al. v.* FINDLEY *et al.*

1. As to one of the plaintiffs it appears from the allegations of the petition that he had remained in possession of certain lands embraced in the deed from himself to the grantee, which was absolute on its face, and that the grantee had never lawfully taken possession of the lands; and that being true, such plaintiff was in a position to assert that there was an agreement in parol touching the reconveyance of the land, which would reduce the deed, absolute on its face, to a security deed. And as under other allegations in the petition the right of this plaintiff to the relief sought depended upon the question whether or not the deed referred to was in fact a mere security deed as averred in the petition, the court should not have dismissed the petition as to this plaintiff upon general demurrer.

2. As to the other plaintiffs no facts are alleged which show their right to contest the absolute conveyances made by them of their interests in the lands, on the ground that they were mere security deeds; and consequently, as to the plaintiffs last referred to, the general demurrer was properly sustained.

3. This being an equitable petition to establish the plaintiffs' right to their interest in the proceeds of the sale of the lands, the dismissal of the case as to certain of the plaintiffs will not work a dismissal as to the plaintiff referred to in the first headnote.

FEBRUARY 21, 1914.

Equitable petition. Before Judge Morris. Forsyth superior court. September 30, 1912.

F. A. Lowe, C. A. Lowe, G. W. Lowe, and Lilla Moore brought their equitable petition against W. R. Lowe, B. J. Findley, and E. E. Brannon. Plaintiffs alleged that they were heirs at law of Joseph F. Lowe, who died March 10, 1906, owning certain real estate in Milton county. Besides those named as plaintiffs, Joseph Lowe left other children, T. F. Lowe, Mrs. Anna M. Phillips, and W. R. Lowe. At the time of his death Joseph Lowe owed $400 or $500. After the death of Joseph Lowe the heirs at law agreed among themselves that F. A. Lowe and W. R. Lowe, who were still living on the old home place, were to purchase all of the interests of the other heirs in the land at a price agreed upon, it being further stipulated that F. A. Lowe and W. R. Lowe should pro-

ceed with the payment of the debts of the estate and deduct a pro-
portionate amount from the money to be paid to each of the other
heirs for their share of the land; and under this agreement F. A.
Lowe and W. R. Lowe went in possession of the land, it being un-
derstood that each one should take two of the lots of land. T. F.
Lowe and Mrs. Anna M. Phillips did not enter into this arrange-
ment, and the question of their interests is not involved in this
case. It was agreed between the heirs who did sell, that, in case
F. A. Lowe or W. R. Lowe should ever decide to sell their interest
in the lands, the other heirs should have the refusal of the same at
the same price. F. A. Lowe and W. R. Lowe, not having the money
to effectuate the scheme, were approached by B. J. Findley, one of
the defendants, who loaned them the money to buy the interest of
the heirs, it being stipulated that the deeds should be made to him
and that he (Findley) would make and execute to them a bond for
title, obligating himself to reconvey all interests of the entire estate
so acquired to F. A. and W. R. Lowe upon the repayment by them
of the money with interest. In advancing the consideration set
forth in the deeds, Findley deducted each heir's proportionate part
of the debts which were paid by him (Findley). The heirs who
agreed to sell executed and delivered to Findley their deeds convey-
ing the land in fee simple to the grantee, and received the con-
sideration, less their proportionate part of the debts due by Joseph
Lowe, which Findley assumed and paid. "It was expressly under-
stood and agreed, at the time of the signing and delivery of the
deeds and as a part of the contract and consideration, that the said
Findley was to make a bond for title to reconvey the whole of said
lands and shares or estate so conveyed to the said F. A. Lowe and
W. R. Lowe when they should have repaid the said loan with in-
terest." When the deeds from the heirs to Findley had been se-
cured, F. A. Lowe and W. R. Lowe offered to make notes for the
amount of money furnished by Findley, including the interest
on the same, and demanded of Findley that he make and execute to
them a bond for title, but Findley "put them off," claiming that
he would get the other two interests and make one bond for title to
the whole place; and later, when he failed to get the interest of
T. F. Lowe, he refused to make any bond for title or to recognize
his obligation to reconvey. In the fall of 1909 F. A. Lowe, leaving
a part of his household goods in a house "on said place," removed
to Duluth, Ga., and W. R. Lowe and Findley and others broke

open and entered the house and threw out his household goods which he had left therein, and forcibly and fraudulently took possession of the place. Since that time W. R. Lowe, for a valuable consideration, "in fraud of petitioners," has confederated and conspired with the said Findley to treat the deeds as absolute (that is, the deeds referred to as having been executed by the petitioners), and in pursuance of this conspiracy W. R. Lowe has made and delivered to the said Findley a quitclaim deed to all his interest in said estate. And further, in pursuance of this conspiracy Findley and W. R. Lowe "did force administration on the estate of Joseph Lowe, E. E. Brannon, the county administrator, being appointed as the administrator of the estate of Joseph Lowe," and Brannon recognized Findley as owner in fee simple of the interests specified in the deeds referred to. On October 4, 1910, "said landed estate" was sold at administrator's sale for the sum of $3,650, and said money "will be paid over and the deeds made by said administrator." It is charged that the contract of sale to F. A. Lowe and W. R. Lowe by C. A. Lowe, Lilla Moore, and others was never fully executed, and that they did not sell or agree to sell their interest to B. J. Findley, and that said Findley did not comply with his part of the contract as he agreed to do, in that he failed to execute the bond for title to reconvey said interest to F. A. and W. R. Lowe. The petitioners prayed, that the administrator be declared a receiver to hold the money arising from the sale of the land; that he be enjoined from paying the distributive shares of the estate over until the issues involved in this case are decided; that until then Findley be enjoined from receiving any of the proceeds of the same; that the deeds above referred to be declared null and void except as a lien upon the property they purport to convey, and that they be canceled.

The defendants demurred generally and specially. The court sustained the general demurrer and dismissed the petition; to which ruling the plaintiffs excepted.

*E. O. Dobbs, L. E. Wisdom, C. L. Harris,* and *I. L. Oakes,* for plaintiffs. *J. P. Brooke* and *H. L. Patterson,* for defendants.

BECK, J. (After stating the foregoing facts.) So far as it affected the petitioners C. A. Lowe, G. W. Lowe, and Lilla L. Moore (being all of the petitioners except F. A. Lowe), the ruling of the court sustaining the general demurrer and dismissing the case

was not error. Dealing with the case made by the plaintiffs named, and not with that of F. A. Lowe, with whose cause of action we deal further on, it is to be observed that the deeds executed by them were absolute conveyances of the property in fee simple to the grantee. To have permitted them to show by parol evidence that previously to or contemporaneously with the execution of the deeds there was a parol agreement that a bond for title should be given, binding the grantee to reconvey, would be in effect to permit them to engraft upon the deed a new and additional contract which the plaintiffs did not allege was intended to have been inserted by the parties thereto or was agreed to and was omitted by mistake. It would in effect be converting the absolute deed into a mere security deed; and this could not be done where possession of the property had been surrendered. "The deed is a clear, definite, and specific contract, and parol evidence is inadmissible to attach a stipulation thereto, to vary its terms or affect the rights of the parties thereunder." *Hall* v. *Waller*, 66 *Ga.* 483. But for an additional reason the plaintiffs referred to failed to state a cause of action, in that they showed no privity of contract between themselves and the defendant Findley. They do not even claim that there was a parol agreement or contract on his part to make bond for title to them. But as to F. A. Lowe a different state of facts was shown. A parol agreement on the part of Findley to make a bond for title to F. A. Lowe is shown. And it has been held in several decisions made by this court, under the provisions of § 3258 of the Civil Code, that a deed absolute on its face, when not accompanied by possession of the grantee, may be proved by parol to be a mortgage only. *Askew* v. *Thompson*, 129 *Ga.* 325 (58 S. E. 854). Under these rulings we think that F. A. Lowe should have been permitted to show a parol agreement for the execution of a bond for title by the grantee in the deed executed by him, and thus convert that deed, absolute on its face, into a security deed, if he never surrendered possession of the premises embraced in the instrument. Now, how stands his showing in the petition, as to the question of retention by the grantor of possession of these premises or a delivery of them to the grantee? The allegation in the petition touching this question is, "F. A. Lowe and W. R. Lowe went into possession of the landed interest of the estate, agreeing that each one of them should take two of the lots of land." And then, after reciting the negotiation between himself

and his brother, W. R. Lowe, on the one hand, and the defendant Findley on the other hand, as to the loan of money and the execution of the deed and the agreement as to the execution of a bond for title, all of which appears more fully in the statement of facts, the petition alleges: "That in the fall of 1909 the plaintiff F. A. Lowe decided to rent out his share of the place and sow some of it down in grain and remove therefrom to Duluth, Ga., in Gwinnett county; and after doing so, or at least removing a part of his household goods, he left a part thereof locked up in the house on said place; but that the said W. R. Lowe and B. J. Findley, and others to whom they claimed to rent petitioner's premises, did break open and enter the house of the said F. A. Lowe and throw his things left therein therefrom, and fraudulently and with force take possession of said place, in the absence of the said F. A. Lowe and without his consent." While these allegations of retention of possession by F. A. Lowe, and the description of the premises of which he retained possession, might have been held to be insufficient if attacked by special demurrer, as against a general demurrer they were sufficient to show that F. A. Lowe did not surrender possession of the premises to Findley, the grantee, and that Findley had never lawfully obtained possession of them; and therefore that F. A. Lowe was still in the position of one who, having made a deed absolute on its face, claims that it was a security deed merely, because of an agreement or contract on the part of the grantee to execute a bond for title conditioned to reconvey upon payment of the debt owing to the grantee. And that being true, his petition should have been retained so that upon the trial the evidence offered by him to sustain his allegations might have been heard and passed upon by a court and jury.

The fact that it is here decided that certain of the plaintiffs can not recover should not work a dismissal of the entire case, this being an equitable petition to establish the plaintiffs' right to their interest in the proceeds of the sale of the lands; and it does not fall within the rule that where in a joint action at law for the recovery of land one or more of the plaintiffs fail all must fail. It follows from what we have said, that the judgment of the court dismissing the case as to all the plaintiffs on general demurrer should be reversed.

*Judgment affirmed in part, and reversed in part. All the Justices concur.*